UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT MICHAEL STEWART,<br><br>                    Plaintiff,<br><br>         v.<br><br>BERNARD WARNER, DONALD HOLBROOK, V. HOLENVINSKI, R. SHERMAN, B. BRAID,<br><br>                    Defendants. | No. C15-5243 RBL-KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for:  March 18, 2016** |

Defendants Bernard Warner, Don Holbrook, V. Holenvinski, R. Sherman, and B. Braid move for summary judgment dismissal of Plaintiff Michael Stewart's claims against them. Dkt. 24. The Court recommends that the motion be granted.

**BACKGROUND**

Plaintiff Robert Michael Stewart, proceeding pro se and in forma pauperis, filed an amended complaint alleging defendants violated his Eighth Amendment rights when they did not refer him to see a neurologist. Dkt. 7. Mr. Stewart asserts Registered Nurses Holevinski, Sherman, and Braid denied his grievances challenging the August 10, 2014 decision of the Care Review Committee (CRC). *Id.* at 3. Mr. Stewart specifically alleges defendants did not review his medical records and "come up with a knowledgeable reasoning about [his] request for medical treatment." *Id.*, at 6. Mr. Stewart requests an injunction compelling defendants to

REPORT AND RECOMMENDATION - 1

provide him with "necessary medical treatment so that [he] may receive a proper diagnosis." Dkt. 7, at 7. Defendants contend that Mr. Stewart has failed to allege their personal participation, has not shown a violation of his Eighth Amendment rights, and that they are entitled to qualified immunity.

## STATEMENT OF RELEVANT FACTS

DOC Policy 550.100, Offender Grievance Program provides a procedure for offenders to file grievances/complaints. Dkt. 25, Declaration of Lee Young, DOC Correctional Specialist 3 at the Washington State Penitentiary (WSP), Attachment A. In addition to the policy, the DOC issues an Offender Grievance Program Manual which provides offenders with information related to the filing and processing of offender grievances. Offenders may file grievances related to a wide range of issues related to their incarceration. *Id.*, Young Declaration, Attachment B.

The grievance procedure consists of four levels of review:

Level 0 – Complaint or informal level. The grievance coordinator at the prison receives a written complaint from an offender on an issue about which the offender wishes to pursue a formal grievance. At this complaint level, the grievance coordinator pursues informal resolution, returns the complaint to the offender for rewriting, returns the complaint to the offender requesting additional information, or accepts the complaint and processes it as a formal grievance. Routine and emergency complaints accepted as formal grievances begin at Level I, complaints alleging staff misconduct are initiated at Level II.

Level I – Grievances against policy, procedure, or other offenders, and grievances processed as emergencies. The local grievance coordinator is the respondent at this level.

Level II – Appeal. Inmates may appeal Level I grievances to Level II. Staff conduct grievances are initiated at this level. All appeals and initial grievances received at Level II are investigated and the prison superintendent is the respondent. Emergency grievances can only be appealed to Level II.

Level III – Appeal. Inmates may appeal all Level II responses except emergency grievances to Department headquarters in Tumwater, where they are re-investigated. Deputy Directors are the respondents.

REPORT AND RECOMMENDATION - 2

Dkt. 25, Young Decl., Attachment B.

Mr. Stewart is currently housed at the Clallam Bay Corrections Center (CBCC). According to his medical records, Mr. Stewart has been treated for complaints of a facial twitch since May 18, 2010. At that time, Stewart was diagnosed with a facial tic and anxiety/stress disorder and no additional treatment was ordered by the provider. Dkt. 26, Declaration of Dale Fetroe, M.D., Facility Medical Director at CBCC, Attachment A. Mr. Stewart was then seen by multiple providers over the next two years for his complaints of facial twitching. None of the providers deemed additional treatment was necessary. Dkt. 26, Fetroe Decl., Attachments B-C.

On March 24, 2013, Mr. Stewart was seen for anxiety and Tourette's syndrome and prescribed Haldol. *Id.*, Fetroe Decl., Attachment D. Over the next year, Mr. Stewart was seen by additional providers for his complaints of a facial twitch and a Clonidine prescription was written to address his Tourette's disorder. *Id.,* Fetroe Decl., Attachments E-F.

On July 1, 2014, Dr. Edwards conducted an examination of Mr. Stewart. Dr. Edwards reviewed Mr. Stewart's medical records, noting complaints of facial twitches for the previous five years, and that Mr. Stewart had a long history of anxiety and mental health problems. The records indicated his facial twitches had been previously diagnosed as either Tourette's syndrome or possible tardive dyskinesia. Mr. Stewart was on Clonidine and Effexor and was able to go about his activities of daily living (ADLs). Dr. Edwards assessed Mr. Stewart with a chronic facial tic, possible Tourette's syndrome, but was doubtful of tardive dyskinesia. Dkt. 26, Fetroe Decl., Attachment G.

Two days later, Dr. Edwards added an addendum, noting that he had received a kite from Mr. Stewart requesting his case be presented to the CRC. Dr. Edwards wrote that his plan was to

REPORT AND RECOMMENDATION - 3

present Mr. Stewart's case to the CRC, despite the fact that he had already discussed the difficulty in treating Tourette's syndrome with Mr. Stewart, and that he was already on medications recommended to treat it. Dkt. 26, Fetroe Decl., Attachment G.

The CRC is a group of DOC primary care physicians, physician assistants, and advanced registered nurse practitioners constituted according to the Offender Health Care Plan (OHP) to review the medical necessity of proposed health care within a cluster of DOC facilities. Dkt. 27, Declaration of Steven Hammond, M.D., DOC's Chief Medical Officer, Attachment A. Medical CRC meetings are convened weekly to review medical issues that arise at various prisons in DOC. All final CRC decisions are made based on a simple majority vote of the medical professionals who are part of the CRC panel and who participate in the discussion of a proposed medical intervention. The CRC votes to either authorize or not authorize proposed interventions. *Id.*, Hammond Decl., Attachment A at 12. The decision of the CRC is recorded on the CRC Report, but the individual votes of the members are not recorded. *Id.*, Hammond Decl., Attachment A at 13.

In making recommendations, the CRC relies on the professional judgment of the medical professionals who make up the CRC concerning whether the proposed treatment is medically necessary. In making this determination reference is made to the OHP, which includes the Washington DOC Levels of Care Directory. The OHP sets forth three Levels of Care: Level 1, care that is medically necessary, which is authorized; Level 2, care that in some cases as determined by CRC is medically necessary; and Level 3, care that is not medically necessary and not authorized. *Id.*, Hammond Decl., Attachment A at 9-10. The conditions listed in the Levels of Care Directory are not intended to be all-inclusive but are intended to be a guide for clinical decision making to help ensure uniformity for decisions about common medical conditions.

REPORT AND RECOMMENDATION - 4

Primary determinants of medical necessity are whether the treatment is necessary to "save life or limb," is necessary to treat intractable pain, or is necessary to preserve the ability to perform ADLs. *Id.,* Hammond Decl., Attachment A at 8. If intervention for these purposes is not necessary at the present, a medical intervention can be authorized if it is determined to be highly likely that the proposed intervention will be required in the future in order to treat intractable pain or to preserve the ability to perform ADLs. *Id.,* Hammond Decl., Attachment A at 8. ADLs are defined as basic self-care activities such as feeding, dressing, and cleaning oneself. *Id.,* Hammond Decl., Attachment A at 6. Medical conditions which are not medically necessary care (and not authorized to be provided under the OHP) include treatment "that gives little improvement in quality of life" and "offers minimal relief of symptoms." *Id.,* Hammond Decl., Attachment A at 10.

Consultants may make recommendations that are not medically necessary as defined in the OHP. In fact, the OHP specifically lists as Level 3 care, "Consultant recommendations (including instructions and orders), when not a Level 1 intervention." *Id.,* Hammond Decl., Attachment A at 25. When a consultant makes a recommendation, the recommendation may be referred to the CRC to decide whether implementation of the recommendation is medically necessary. If it is found to be not medically necessary, the condition is categorized as a Level 3 condition and the recommendation that the consultation be covered is denied. *Id.*

On July 23, 2014, Mr. Stewart's case was presented to the CRC with Dr. Edwards' request for a neurology consult. The CRC was referred to Dr. Edwards' examination findings which noted a normal neck range of motion, normal gait and balance and Mr. Stewart's ability to maintain his ADLs. In addition, the CRC was informed Mr. Stewart was prescribed Clonidine

REPORT AND RECOMMENDATION - 5

and Venlafaxine to treat his symptoms. The CRC discussed the case and determined a neurology consult was not medically necessary. Dkt. 26, Fetroe Decl., Attachment H.

The next month, Mr. Stewart filed Grievance Log ID 14569327 related to the CRC's denial of his request for a neurology consult. Vicki Holevinski, Registered Nurse 3 at the WSP, was assigned to investigate Mr. Stewart's Level I grievance. Her investigation included a review of his medical record which indicated the CRC did not find a request for a neurological consult to be medically necessary under the Offender Health Plan. She met with Mr. Stewart and explained the decision and also encouraged him to work with his provider if he had any changes in his condition. Dkt. 28, Declaration of Vickie Holevinski, at ¶ 4. Ms. Holevinski was not a voting member of the CRC which found Mr. Stewart's condition not a medical condition to be treated under the OHP. Her review of the grievance information provided her with no information or reason to doubt the CRC's determination. *Id.,* at ¶ 5.

Mr. Stewart appealed his grievance to Level II. Dkt. 25, Young Decl., Attachment C. Roy Sherman, Registered Nurse 3 at the WSP, was assigned to investigate the Level II grievance. Mr. Sherman noted that Mr. Stewart had received an adequate Level I investigation which included a review of his medical record. Dkt. 29, Declaration of Roy Sherman, ¶ 4. Mr. Sherman was not a voting member of the CRC which found Mr. Stewart's condition not a medical necessary condition to be treated under the OHP. His review of the grievance investigation provided him with no reason to doubt the CRC's determination. *Id.,* ¶ 5.

After receiving the Level II decision, Mt. Stewart filed a Level III appeal. Dkt. 25, Young., Decl., Attachment C. Barbara Braid, Director of Nursing Service at DOC Headquarters in Tumwater, reviewed the appeal and concurred with the decisions of Nurse Holevinski and Nurse Sherman. Dkt. 30, Barbara Braid Declaration, ¶¶ 3-4. Ms. Braid was not a voting

REPORT AND RECOMMENDATION - 6

member of the CRC which found Mr. Stewart's condition not a medical necessary condition to be treated under the OHP. His review of the grievance investigation provided him with no reason to doubt the CRC's determination. *Id.,* ¶ 5.

Mr. Stewart continued to receive medical treatment between November 19, 2014 and June 2, 2015. None of the providers deemed additional treatment for Mr. Stewart's Tourette's syndrome was necessary beyond the existing medication (Clonidine). Dkt. 26, Fetroe Decl., Attachment I.

In addition to being seen by medical staff, Mr. Stewart has also been seen by Psychology Associate Caroline Gillespie on two occasions since his arrival at the CBCC. On August 25, 2015, Ms. Gillespie observed Mr. Stewart has a pronounced facial tic and confirmed his Clonidine prescription for facial tics and Haldol prescription for facial tics and Tourette's. Ms. Gillespie assessed Mr. Stewart as settling in fairly well and as stable with his medications. Dkt. 26, Fetroe Decl., Attachment J.

According to Dr. Fetroe, the OHP calls for reconsideration of the previous decision (denying the neurology consult) if there is any indication of deterioration of the patient's condition or progression of the disease. However, Dr. Fetroe states that Mr. Stewart is getting along well on his mediations and is fitting into the routine of CBCC reasonably well. Mr. Stewart has been evaluated by the two providers who manage his Tourette's as well as an evaluation by a physician for unrelated issues without evidence that the Tourette's has progressed or worsened. The October 1, 2015 entry in Mr. Stewart's medical record states he is "stable without issues on unit", and is currently compliant with his medications such that he has earned the privilege of keeping his medications in his personal belongings. Dkt. 26, Fetroe Decl., at ¶ 16. At the time of Dr. Fetroe's declaration (October 15, 2015), Mr. Stewart was

REPORT AND RECOMMENDATION - 7

scheduled for a follow-up appointment for his Tourette's in six weeks and had no other medical issues that require more urgent follow-up. *Id.*

## STANDARD OF REVIEW

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party has the initial burden of production to demonstrate the absence of any genuine issue of material fact. Fed. R. Civ. P. 56(a); *see Devereaux v. Abbey,* 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000). A nonmoving party's failure to comply with local rules in opposing a motion for summary judgment does not relieve the moving party of its affirmative duty to demonstrate entitlement to judgment as a matter of law. *Martinez v. Stanford*, 323 F.3d 1178, 1182-83 (9th Cir. 2003).

"If the moving party shows the absence of a genuine issue of material fact, the non-moving party must go beyond the pleadings and 'set forth specific facts' that show a genuine issue for trial." *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898 (9th Cir. 2002) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)). The non-moving party may not rely upon mere allegations or denials in the pleadings but must set forth specific facts showing that there exists a genuine issue for trial. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 249 (1986). A plaintiff must "produce at least some significant probative evidence tending to support" the allegations in the complaint. *Smolen v. Deloitte, Haskins & Sells*, 921 F.2d 959, 963 (9th Cir. 1990).

REPORT AND RECOMMENDATION - 8

# DISCUSSION

To be entitled to relief under 42 U.S.C. § 1983, a plaintiff must show: (i) the conduct complained of was committed by a person acting under color of state law; and (ii) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327 (1986). Section 1983 is not merely a "font of tort law." *Parratt*, 451 U.S. at 532. That plaintiff may have suffered harm, even if due to another's negligent conduct, does not in itself, necessarily demonstrate an abridgment of constitutional protections. *Davidson v. Cannon*, 474 U.S. 344, 347 (1986).

## A.    Personal Participation

A plaintiff must prove that the particular defendant has caused or personally participated in causing the deprivation of a particular protected constitutional right. *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981); *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). To be liable for "causing" the deprivation of a constitutional right, the particular defendant must commit an affirmative act, or omit to perform an act, that he or she is legally required to do, and which causes the plaintiff's deprivation. *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Sweeping conclusory allegations against an official are insufficient to state a claim for relief. The plaintiff must set forth specific facts showing a causal connection between each defendant's actions and the harm allegedly suffered by plaintiff. *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980); *Rizzo v. Goode*, 423 U.S. 362, 371 (1976).

Supervisory officials cannot be held liable under a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). Personal participation is an essential element of a § 1983 claim. *Johnson*, 588 F.2d at 743-44. Prison officials who are not medical providers are not

REPORT AND RECOMMENDATION - 9

deliberately indifferent when they defer to the judgment of treating medical providers.  *See Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004); *Hayes v. Snyder*, 546 F.3d 516, 526-28 (7th Cir. 2008); *cf. Peralta v. Dillard*, 744 F3d 1076, 1086-87 (9th Cir. 2014)(non-specialist doctor was not deliberately indifferent when he deferred to specialist).  Absent some personal involvement by the defendants in the allegedly unlawful conduct of subordinates, they cannot be held liable under § 1983.  *Johnson*, 588 F.2d at 743-44.

In his amended complaint, Mr. Stewart names Nurses Holevinski, Sherman, and Braid asserting they denied his grievances and failed to provide him with access to treatment. Dkt. 7, at 2-3.  However, the record reflects that none of these defendants served on the CRC which made the determination regarding Mr. Stewart's neurology consultation request and that none of the defendants had any medical decision making authority over Mr. Stewart's care.

Mr. Stewart also names Superintendent Holbrook and Secretary Warner as defendants in his amended complaint. Dkt. 7 at 1-3.  However, other than merely name them as defendants, Stewart's complaint is devoid of any claim that either one of them were aware of his complaints or made any medical decisions regarding his neurology request.  Nor is there any evidence that any of the defendants would have had any reason to second-guess the medical opinions of Mr. Stewart's health care providers or the CRC.

Moreover, even if Mr. Stewart were able to replace or name additional defendants, he has failed to show a violation of his Eighth Amendment rights.

**B.      Eighth Amendment – Medical Treatment**

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.2006) (*quoting Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The two prong

REPORT AND RECOMMENDATION - 10

test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." *Jett*, 439 F.3d at 1096 (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." *Jett*, 439 F.3d at 1096 (*citing McGuckin*, 974 F.2d at 1060). To state a claim for violation of the Eighth Amendment, a plaintiff must allege sufficient facts to support a claim that the named defendants "[knew] of and disregard[ed] an excessive risk to [plaintiff's] health ...." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir.1980) (*citing Estelle*, 429 U.S. at 105–06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106; *see also Anderson v. County of Kern*, 45 F.3d 1310, 1316 (9th Cir.1995); *see also McGuckin*, 974 F.2d at 1050. Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir.1990).

Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a § 1983 claim." *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir.1981). To prevail, a plaintiff "must show that the course of treatment the doctors

REPORT AND RECOMMENDATION - 11

chose was medically unacceptable under the circumstances ... and ... that they chose this course in conscious disregard of an excessive risk to plaintiff's health." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir.1986). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir.1989).

The record reflects that since his arrival to DOC in 2010, Mr. Stewart has been seen by multiple providers who have provided treatment for his facial tics with medication. None of those providers have recommended additional treatment or believed a neurology consult was necessary. Dkt. 26, Fetroe Decl., Attachments A-J. Dr. Edwards submitted Mr. Stewart's request that he be considered for a neurology consultation at Mr. Stewart's request. Dr. Edwards believed Mr. Stewart's treatment plan was adequate and "it was best for him to continue on what he is doing now." *Id.,* Fetroe Decl., Attachment G. The other 20 members of the CRC agreed and did not find a neurology consultation was medically necessary given Mr. Stewart's symptoms. *Id.,* Fetroe Decl., Attachment H.

Defendants contend that Mr. Stewart's symptoms are not evidence of a serious medical need requiring additional treatment. Even assuming Mr. Stewart is suffering a serious medical need, there is no evidence that defendants were deliberately indifferent to that serious medical need. It is clear that Mr. Stewart does not agree with the treatment plan his medical providers have established for him. However, differences in judgment between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment are not enough to establish a deliberate indifference claim. *See Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989). In addition, a failure or refusal to provide medical care constitutes an Eighth Amendment violation only under exceptional circumstances that approach failure to provide care at all. *Shields v. Kunkel*, 442 F.2d 409, 410 (9th Cir. 1971). To prevail on an Eighth Amendment

REPORT AND RECOMMENDATION - 12

medical claim, Mr. Stewart must show "more than a 'difference of medical opinion' as to the need to pursue one course of treatment over another …." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).   Mr. Stewart must show that a course of treatment the doctors chose was medically unacceptable under the circumstances, and he must show that they chose this course in conscious disregard of an excessive risk to his health. *Id.*

In his declaration, filed in response to defendants' motion for summary judgment, Mr. Stewart states that even though Dr. Edwards acknowledges that there are a number of medications that are tried for treatment of Tourett's, some of these medications are amphetamine-like meds, which DOC does not allow, is proof that there is help for him but the DOC will not allow the doctors treating him to correct the problem. Dkt. 35, Declaration of Michael R. Stewart, at ¶ 3.  However, there is no evidence showing that defendants or any other DOC medical staff engaged in medically unacceptable treatment.  Rather, the records reflect that Mr. Stewart has been seen on multiple occasions over the years by medical and mental health staff for his complaints of a facial tic, and none of his medical providers have concluded that Mr. Stewart's condition requires additional treatment or a neurology consultation. Dkt. 26, Fetroe Decl., Attachments A-J.

Mr. Stewart's medical records and examinations indicate that he has been properly diagnosed and that while his facial tics have been present for five years, there is no indication of deterioration of his condition or progression of the disease.  Instead, it appears Mr. Stewart is getting along well on his medications and is fitting into the routine of his new facility reasonably well, and that he will continue being seen by medical providers as needed.  He has been evaluated by the two providers who manage his Tourette's as well as an evaluation by a

physician for unrelated issues without evidence the Tourette's has progressed or worsened. Dkt. 26, Fetroe Decl., at ¶16.

At best, Mr. Stewart's assertions of inadequate care amount to a difference of opinion regarding the course of treatment or a claim of negligence.  However, because the decision to deny treatment was medically acceptable and the record establishes that none of the defendants or other DOC staff were in conscious disregard of an excessive risk to Mr. Stewart's health, his Eighth Amendment claim should be dismissed with prejudice.

**C.   Qualified Immunity**

Alternatively, defendants contend they are entitled to qualified immunity from damages. Qualified immunity protects government officials from liability for damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). In determining whether defendants are entitled to qualified immunity, the court makes a two-step inquiry. First, the court must determine if plaintiff has shown that defendants violated his constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009). Second, the court must determine if the right was clearly established. *Id.* This second inquiry requires the court to determine if it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Id.* at 202.

As noted above, the undersigned recommends dismissal of Mr. Stewart's claims because he has not established a violation of his constitutional rights.  Thus, the court need not further consider the issue of qualified immunity.

REPORT AND RECOMMENDATION - 14

**CONCLUSION**

Viewing the record in the light most favorable to Mr. Stewart, the undersigned concludes that Mr. Stewart has failed to demonstrate the existence of a material issue of fact relating to his claims that the defendants violated his constitutional rights. Accordingly, it is recommended that defendants' motion for summary judgment (Dkt. 24) be **GRANTED** and all claims against them **dismissed with prejudice**.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **March 18, 2016,** as noted in the caption.

**DATED** this 29th day of February, 2016.

Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15